UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PEDRO FIGUEROA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-10169-RGS |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| Defendant. | ) ) ) | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REVERSE
AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION**

November 25, 2013

SOROKIN, C.M.J.

Pending are Plaintiff's Motion to Reverse (Docket No. 14) and Defendant's Motion to

Affirm the Commissioner's Decision (Docket No. 20) in a Supplemental Security Income

Benefits appeals case.  For the reasons that follow, I recommend that the Commissioner's

Decision be affirmed.

**I. Procedural and Factual History**

*Procedural History*

On March 29, 2010, Plaintiff Pedro Figueroa ("Figueroa") applied for Supplemental

Security Income Benefits.  *Administrative Record* ("A.R.") at 116.  Figueroa claimed that he was

unable to work because of an ongoing pain attributed to traumatic lumbar spine strain with an

onset date of July 30, 2008.[1]  A.R. at 116, 319.  Figueroa's claims initially were denied by the

Commissioner on August 3, 2010, A.R. at 47-48, and were denied upon reconsideration on

November 10, 2010, A.R. at 51-53.  On November 16, 2010, Figueroa filed a request for an

---

[1] Plaintiff's counsel moved to amend the onset date to the date of application, March 29, 2010.  A.R. at 32.

administrative hearing, A.R. at 57, which was held before an Administrative Law Judge ("ALJ")
on November 16, 2011, A.R. at 27.

Figueroa failed to appear at the hearing but was represented by his counsel.[2]  A.R. at 27-
42.  Vocational Expert ("VE") Ruth Baruke also testified.  A.R. at 33-41.  The ALJ issued her
decision on December 15, 2011, finding that Figueroa was not disabled within the meaning of
the Social Security Act.  A.R. at 22.  The Decision Review Board denied Figueroa's request for
review, and thus the ALJ's decision became the final decision of the Commissioner.  A.R. at 1-3.
Figueroa filed his complaint in this Court seeking review pursuant to 42 U.S.C. § 405(g) on
January 28, 2013.  Docket No. 1.

*Facts*

At the time of the ALJ's decision, Figueroa was thirty-eight years old.  A.R. at 30.  He
completed eighth grade, A.R. at 178, and claims that he attended special education classes, A.R.
at 283.  He does not have a GED.  A.R. at 264.  Currently, Figueroa is divorced and lives with
his girlfriend, who supports him financially.  A.R. at 258.  Figueroa had two children; one died at
the age of seven while Figueroa was incarcerated, and Figueroa learned in 2010 that the other is
not his biological child.  *Id.*  In 2008, Figueroa injured his back and became addicted to pain
medication.[3]  *Id.*  Before his injury, Figueroa held positions as a cashier, baker, cook, gardener,
and mover.  A.R. at 185.

On March 3, 2010, Figueroa sought therapy services for symptoms of anxiety,
depression, and substance abuse with Riverside Community Care.  A.R. at 257-73.  On that day,
Figueroa's memory and judgment were noted to be within normal limits.  A.R. at 263.  Figueroa

---

[2] When a Claimant fails to appear at his hearing, an ALJ may choose to dismiss the case.  However, the ALJ in this case did not elect to do so.  A.R. at 29.
[3] Figueroa does not challenge the ALJ's findings related to his physical limitations.  The facts, therefore, focus on his psychological history.

disclosed that he had a history of using alcohol, cocaine, heroin, and marijuana, A.R. at 271, and that he went through a detox program at Norcap from January 25th to 29th in 2010 to address his narcotics addiction,[4] A.R. at 272.  Figueroa also indicated that he was interested in attending future weekly therapy sessions and received information about how to utilize crisis team services.[5]  A.R. at 267.

On June 30, 2010, Figueroa met with Dr. Yacov Kogan for a consultation.  A.R. at 278. Figueroa reported that he never had been medicated for his depression and anxiety and denied any history of psychiatric hospitalizations.  *Id.*  Dr. Kogan found that Figueroa registered three out of three objects, recalled three out of three objects at three minutes, had a six-digit forward memory span, and had organized thought processes.  A.R. at 279-80.

On July 9, 2010, Figueroa attended an additional consultation with a different physician, Dr. Byron Garcia.  A.R. at 283.  During this consultation, Figueroa stated that he was using heroin regularly, having used it two days earlier, and did not report an interest in staying clean. *Id.*  Although Figueroa reported that he has very poor memory and is unable to retain information, Dr. Garcia noted that Figueroa was able to remember past events, recent events, and his attention was intact throughout the interview.  A.R. at 284.  Further, Dr. Garcia found Figueroa's memory and attention to be within normal limits and his judgment and insight to be poor.  A.R. at 285.  In his case formulation, Dr. Garcia stated that Figueroa presented with a history compatible with opiate abuse and antisocial personality disorder.  *Id.*

On July 27, 2010, Dr. Carol A. McKenna filled out a Psychiatric Review Technique Form ("PRT Form") and Mental Residual Functional Capacity Assessment ("MRFCA") for

---

[4] Figueroa attended several detox programs at Norcap from February 25th to March 3rd and July 19th to 22nd in 2011.  A.R. at 437-38.  Both times he was discharged, once against medical advice, with aftercare in place.  A.R. at 438.

[5] After attending five therapy appointments, Figueroa was a no-show for the sixth appointment and did not return phone calls or respond to reschedule request letters.  A.R. at 429.

Figueroa.  A.R. at 290-307.  In these check-off-the-box forms, Dr. McKenna rated the degree of

limitation for maintaining social functioning and for maintaining concentration, persistence, or

pace as "Moderate."  A.R. at 300.  She also noted Figueroa had one or two episodes of extended

decompensation.  *Id.*  In the MRFCA, Dr. McKenna rated Figueroa's ability to carry out detailed

instructions, to understand and remember detailed instructions, and to maintain attention and

concentration for extended periods as "Moderately Limited."  A.R. at 304.  She also rated as

"Moderately Limited" Figueroa's ability to complete a normal work day and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without

an unreasonable number and length of rest periods.  A.R. at 305.  Furthermore, she applied the

same rating to Figueroa's ability to accept instructions and respond appropriately to criticism

from supervisors and to get along with coworkers or peers without distracting them or exhibiting

behavioral extremes.  *Id.*  In a more detailed narrative, Dr. McKenna opined that Figueroa, who

has a long substance addiction history with no pursuit of regular treatment, would be able to

understand and remember simple instructions, carry out simple tasks, attend and concentrate for

two-hour periods during an eight-hour workday and sustain this for a work week, engage in

adequate social interaction with effort, and adapt to routine changes after a brief period of

adjustment, if he were to abstain from his substance addiction.  A.R. at 306.  Dr. Lawrence

Langer reviewed Figueroa's file and affirmed Dr. McKenna's findings on October 26, 2010.

A.R. at 316.

### *Vocational Expert Testimony*

The VE, Ruth Baruke, worked with the New England Rehabilitation Hospital and

Advocates Inc. and had twenty-two years of vocational expertise as of 2009.  A.R. at 94-97.  The

ALJ asked the VE the following hypothetical:

> Assume a person of the claimant's age, education and work experience who is limited to the light range of work, as that term is defined in the Social Security Act. . . . Can occasionally climb ramps or stairs, ladders, ropes, scaffolds, balance, stoop, kneel, crouch or crawl. And would be further limited to concentrated exposure to unprotected heights and hazardous machinery and sharp instruments. Further limited to simple, routine tasks. Only occasional decision-making. Only occasional changes in the work setting. Only occasional interactions with the public, and the work can be around coworkers throughout the day, but with only occasional interactions with coworkers.

A.R. at 34-35.  Based on the stated limitations, the VE ruled out all of Figueroa's past work, but testified he could perform some light, unskilled work.[6]  A.R. at 35.  The VE then listed the following representative jobs: mail sorter (DOT 209.687-026; 3,680 in Massachusetts; 131,000 in the USA), electronic work (DOT 726.687-010; 2,210 in MA; 239,550 in the USA), handpackager, inspector work (DOT 559.687-074; 6,950 in MA; 410,000 in the USA).[7]  A.R. at 35-36.  Figueroa's counsel then questioned the VE, adding the following limitations to those presented by the ALJ:

> if we said that our hypothetical person, in addition to being limited to simple routine tasks, had a moderate limitation in the ability to maintain attention and concentration, moderate limitation in the ability to accept instructions and criticism from supervisors, a moderate limitation in the ability to get along with coworkers, and a moderate limitation in the ability to respond to ordinary changes in the work setting, would that impact any of these jobs?

A.R. at 36.  The VE responded by asking for a definition of "Moderate Limitations."  Figueroa's counsel first defined it as "occasional, meaning up to a third of the workday."  *Id.*  Under that

---

[6] The Social Security Administration Program Operation Manual System states that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to: (1) understand, carry out, and remember simple instructions; (2) make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; (3) respond appropriately to supervision, coworkers and work situations; and (4) deal with changes in a routine worksetting."  Social Security Administration Program Operation Manual System § DI 25020.010(B)(3), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (last visited Nov. 20, 2013) [hereinafter SS Manual].

[7] DOT stands for "Dictionary of Occupational Titles" published by the Department of Labor ("DOL") and "includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. § 416.969.  The Social Security Administration "take[s] administrative notice of reliable job information available from" this publication.  20 C.F.R. § 416.966(d).  The VE stated the total number of available jobs in the mail sorter, electronic work, and handpackager, inspector work census groups in Massachusetts and in the country.

definition, the VE stated that the hypothetical person would not be able to perform the proffered

representative jobs.  A.R. at 37.  Figueroa's counsel then changed the definition of "Moderate

Limitations" to "only ten percent of the workday."  *Id.*  The VE stated that such limitations

would constitute a borderline situation where the proffered jobs would not be ruled out, but the

VE could not predict how the person would function.  A.R. at 37-40.  Finally, the VE explained

that the job numbers she cited were for the entire census code or SOC code grouping, and that of

the jobs within at least one code, few variations existed in exertional and skill levels.[8]  A.R. at

40.

### The ALJ's Decision

In assessing Figueroa's Supplemental Security Income Benefits request, the ALJ

conducted the five-step sequential evaluation process that determines whether an individual is

disabled and thus entitled to benefits.  *See* 20 C.F.R. § 416.920(a); *Goodermote v. Sec'y of

Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir. 1982); A.R. at 14-15.

First, the ALJ must determine whether the claimant is engaged in substantial gainful

activity.  20 C.F.R. § 416.920(b).  Here, Figueroa had not engaged in substantial gainful activity

since his alleged onset date.  A.R. at 15.

Second, the ALJ must determine whether the claimant has a medically determinable

impairment or combination of impairments that is "severe."  20 C.F.R. § 416.920(c).  An

impairment is severe if it "significantly limits [the claimant's] physical or mental capacity to

perform basic work-related functions."  *Goodermote*, 690 F.2d at 6.  The ALJ found that

---

[8] SOC stands for "Standard Occupational Classification" and is also published by the DOL. Each census or SOC code group "encompass[es] a number of DOT jobs."  *Nichols v. Astrue, No. 10-11641-DPW, 2012 WL 474145, at *6 (D. Mass. Feb. 13, 2012).*  In *Nichols*, the same VE as in this case testified that "[t]he census group for the mail sorter job encompassed four DOT jobs, . . . and the census group for the electronics worker job was an umbrella grouping of 1,507 DOT jobs."  *Id.*

Figueroa has the following severe impairments: mild scoliosis and mild degenerative disc disease at L2-3, depressive disorder, antisocial personality disorder, and active polysubstance abuse. A.R. at 15.

At the third step, the ALJ must determine whether the claimant has impairments that meet or are medically equal to one of the listed impairments in Appendix 1 of Subpart P of the Social Security Regulations. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. The ALJ found that Figueroa has no more than moderate limitations in daily living activities and social functioning. A.R. at 15. In regards to concentration, persistence or pace, although cognitive testing and treating counselors found Figueroa within normal limits and with intact attention, the ALJ gave Figueroa "some benefit of the doubt" and assigned him moderate limitations in this area of functioning. A.R. at 16-17. After considering the state agency medical consultants' opinions, the ALJ found that Figueroa does not have a physical or mental impairment or combination of impairments that meets or equals a listed impairment. A.R. at 16.

Whenever there is a determination that the claimant has a significant impairment, but not an "Appendix 1 impairment," the ALJ must assess and make findings about the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis, despite limitations from his impairments. 20 C.F.R. § 416.945. The ALJ evaluated the intensity, persistence and limiting effects of Figueroa's symptoms to determine the extent of Figueroa's functioning limitations. A.R. at 18. The ALJ found that even with a significant substance abuse history, objective medical evidence of record showed that Figueroa's substance abuse would not materially affect the RFC finding. A.R. at 19-20. The ALJ based this finding on Dr. Garcia's consultation, where Figueroa admitted to currently using heroin regularly but reported no feelings of depression,

racing thoughts, pressured speech, grandiosity, hallucinations, or paranoia.  A.R. at 20.

Furthermore, the ALJ gave great weight to Dr. McKenna and Dr. Langer's opinions that

Figueroa could follow simple instructions, could maintain concentration, persistence, and pace

on simple tasks for two-hour periods over an eight-hour day, could adequately interact with

effort, and could adapt to routine change after a period of adjustment.  *Id.*  After considering all

symptoms, their consistency with objective medical evidence and other evidence, and opinion

evidence, the ALJ found the following RFC for Figueroa:

> RFC to perform light work as defined in 20 CFR 416.967(b) except that he is
> limited to climbing, balancing, stooping, kneeling, crouching, and crawling no
> more than occasionally, and he must avoid concentrated exposure to hazards such
> as heights, hazardous machinery, and sharp instruments. He is limited to the
> performance of simple routine tasks, with only occasional decision-making and
> occasional changes in work setting. He can have only occasional interactions with
> coworkers and with the general public.

A.R. at 17-18.

At the fourth step, the ALJ must consider the claimant's past relevant work and RFC.  20

C.F.R. § 416.920(a)(4)(iv).  The ALJ must determine whether the claimant has the RFC to

perform his past relevant work's requirements.  20 C.F.R. § 416.920(f).  Considering the VE's

testimony, Figueroa's RFC and physical and mental demands of his past relevant work, the ALJ

found Figueroa unable to perform any past relevant work.  A.R. at 21.

At the fifth step, the ALJ must ask whether the claimant's impairments prevent him from

performing other work found in the national economy.  20 C.F.R. § 416.920(g).  Considering

Figueroa's age, education, work experience, and RFC, the ALJ determined that a finding of "not

disabled" would be directed by the Medical-Vocational Guidelines ("the Grid").[9]  A.R. at 21.

The ALJ noted that as Figueroa had nonexertional limitations, the Grid would be used as a

---

[9] The Medical-Vocational Guidelines can be found in appendix 2 of subpart P of part 404 of the chapter.

framework, and the VE's testimony would also be consulted.[10]   A.R. at 21-22.   Based on the

VE's testimony, the ALJ concluded that Figueroa is capable of making a successful adjustment

to other work that exists in significant numbers in the national economy, and thus, Figueroa is

not disabled.  A.R. at 22.

## II. Discussion

Figueroa advances four claims of error: (1) the VE contradicted the ALJ's findings; (2)

the ALJ's hypothetical failed to include all of Figueroa's mental limitations; (3) the

Commissioner failed to meet his burden of proof to establish jobs in the national economy for a

person with Figueroa's limitations; and (4) the ALJ improperly relied upon the Grid.  Docket No.

14 at 4-12.  The claims are without merit.

### Standard of Review

The District Court may enter "a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

42 U.S.C. § 405(g).  However, the Court may not disturb the Commissioner's findings where

they are supported by substantial evidence and when the Commissioner has applied the correct

legal standard.  *Id.*  Likewise, where the Commissioner's finding is not supported by substantial

evidence, or is the result of an error of law in the evaluation of the claim, the Court will not

uphold the Commissioner's decision.  *Id.*  Substantial evidence supporting the Commissioner's

decision exists "if a reasonable mind, reviewing the evidence in the record as a whole, could

accept it as adequate to support his conclusion."  *Rodriguez v. Sec'y of Health & Human Servs.*,

647 F.2d 218, 222 (1st Cir. 1981).  Although the administrative record might support multiple

conclusions, the Court must uphold the Commissioner's findings when they are supported by

---

[10] Exertional limitations affect the "ability to meet the strength demands of jobs."  20 C.F.R. § 416.969a(a).  Non-exertional limitations only affect the "ability to meet the demands of jobs other than the strength demands."  20 C.F.R. § 416.969a(c).

substantial evidence. *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 770 (1st

Cir. 1991). "[T]he possibility of drawing two inconsistent conclusions from the evidence does

not prevent an administrative agency's finding from being supported by substantial evidence."

*Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981) (internal quotations omitted).

### *Claims of Error (1) and (2): the Mental Limitations and the VE's Testimony*

Figueroa alleges that the testimony of the VE contradicts the ALJ's findings. Docket No.

14 at 5. In a related argument, Figueroa contends that the ALJ's hypothetical question failed to

account for the moderate limitations expressed by the mental RFC evaluations. *Id.* Figueroa is

incorrect on both counts.

Concededly, the VE testified that with a "moderate" limitation Figueroa could not work.

A.R. at 36-37. However, the VE so testified only <u>after</u> Figueroa's counsel supplied a definition

of "moderate" as restricting the workday up to one-third of the day. *Id.* While Dr. McKenna, on

both the PRT Form and the MRFCA, termed some of Figerora's limitations as "moderate,"

neither of the forms give "moderate" the meaning supplied by counsel. *See* A.R. at 300, 304-05;

*see also* SS Manual § DI 24505.025, available at

https://secure.ssa.gov/apps10/poms.nsf/lnx/0424505025 (last visited Nov. 20, 2013) (instructions

on the purpose and completion of the PRT Form). The terms of the PRT Form reject counsel's

expansive definition. "Moderate" is the middle of five ratings ranging from "none" to

"extreme." A.R. at 300. The consultant's narrative report finding Figueroa "would be able to

perform normal activities with moderate effort were he to sustain sobriety" supports the ALJ's

findings rather than counsel's reading of the term.[11]

---

[11] The sobriety limitation complies with the applicable law. *See* 42 U.S.C. § 1382c(J) (providing that "an individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is

The other form counsel cites, the MRFCA, A.R. at 304-07, also fails to support counsel's interpretation.  While "moderate" appears as the third of four levels ("no evidence of limitation," "not significantly limited," "moderately limited" and "markedly limited"), the form instructs the reviewer to record "[d]etailed explanation[s] of the degree of limitation" along with "other assessment information" in a subsequent section of the form.  A.R. at 304.  Dr. McKenna did just that.  She wrote that Figueroa, with abstinence, could "[c]arry out simple tasks, attend and concentrate for 2 hour periods during an 8 hour workday and sustain this for a workweek."  A.R. at 306.  Moreover, "[t]he ALJ is under no obligation to accept the 'check-box conclusions' found in Section I of the Mental RFC form. Instead, as provided on the face of the form itself, the criteria found in Section I of the form should be used to provide a more detailed assessment of RFC in Section III of the form." *Dorman v. Soc. Sec. Admin.*, No. 4:12-CV-40023, 2013 WL 4238315, at *14 (D. Mass. May 21, 2013) (quoting *Pippen v. Astrue*, No. 1:09cv308, 2010 WL 3656002, at *6 (W.D.N.C. Aug. 24, 2010), *adopted by* 2010 WL 3655998 (W.D.N.C. Sept. 15, 2010)).

Finally, the case law Figueroa cites is also inapposite. For example, in *McHugh*, the ALJ erred for failing to reflect the mental RFC determination of moderate limits in concentration, persistence, or pace in the hypothetical question.  *McHugh v. Astrue*, No. 09-104-B-W, 2009 WL 5218059, at *4 (D. Me. Dec. 30, 2009), *adopted by* 2010 WL 324433 (D. Me. Jan. 20, 2010). The Court held that limitations in the hypothetical question regarding "judgment, decision-making, and changes in the work setting" failed to capture the mental limitations of "concentration, persistence, or pace." *Id.*  In Figueroa's case, the ALJ's findings comply with *McHugh*. Within her hypothetical question to the VE, the ALJ recognized those mental RFC

---

disabled."); 20 C.F.R. § 416.935 (requiring consideration of only those limitations which would remain after claimant stopped using drugs or alcohol).

limitations expressed in the doctors' detailed findings. *See* A.R. at 35, 306. Thus, this is not a case, as was *McHugh*, in which the ALJ's "failure to convey to the vocational expert the moderate limitations [s]he found in concentration, persistence, or pace undermines [the] reliance on that expert's testimony." *McHugh*, 2009 WL 5218059, at *4. Essentially, Figueroa disputes the ALJ's reliance on the detailed findings made by the doctors rather than the meaning counsel supplied to the words "moderate limitation" on the check-off-the-box portion of the forms. Both the law and substantial evidence permitted the ALJ to render her decision as crafted.

### *Claim of Error (3): VE Testimony Regarding Available Jobs*

Figueroa alleges that the job numbers provided by the VE are unreliable and, as a result, the ALJ improperly relied upon them in reaching her conclusion that work existed in the national economy in sufficient numbers to permit Figueroa to find other employment. Docket No. 14 at 9. Specifically, Figueroa challenges the numbers as arising from aggregate groupings of occupations based on census codes, which she argues include jobs from multiple DOT classifications that vary in exertional and skill levels. *Id.*

Figueroa cites to cases, primarily litigated by his counsel's firm in the District of Maine, in which he claims VE testimony was deemed inadequate when quoted job numbers represented aggregate groupings rather than figures derived solely from the specific DOT classifications. *See Dorman v. Astrue*, No. 12–40023–TSH, 2013 WL 4238315 (D. Mass. May 21, 2013); *St. Pierre v. Astrue*, No. 1:10–CV–00104–JAW, 2011 WL 202452 (D. Me. Jan. 19, 2011); *Clark v. Astrue*, No. 09–390–P–H, 2010 WL 2924237 (D. Me. July 19, 2010). In *Clark* and *St. Pierre*, "the vocational expert simply relayed numbers keyed to . . . census codes without attempting to specify the percentage attributable to the specific DOT-coded jobs in question." *St. Pierre*, 2011 WL 202452, at *3 n.3. However, courts have distinguished such cases from those in which "the

VE relied on both the published numbers **and** the VE's own expertise." *Dorman*, 2013 WL

4238315, at *8 (emphasis added); *see also Poisson v. Astrue*, No. 2:11–cv–245–NT, 2012 WL

1067661 (D. Me. Mar. 28, 2012) (finding the VE relied on her experience when she explained

"why she thought that the underlying data was reliable and endorsed the numbers derived

therefrom as accurate"); *Woodard v. Astrue*, No. 1:10–cv–327–DBH, 2011 WL 2580641, at *5

(D. Me. June 28, 2011) (finding the VE's testimony that, "based on her professional experience,

the numbers sounded 'realistic in terms of availability[,]'" showed the VE's reliance on her

experience).

　　When questioned about the numbers she cited here, the VE explained that the proffered

jobs were "representative" groups of individual DOT jobs that the hypothetical person could

perform.  A.R. at 40.  Presumably relying on her specialized knowledge and experience, the VE

explained that some of the census codes including the representative jobs vary in exertional and

skill level more than others.  *Id.* (noting the mail sorter census code is the most limited, including

only light, unskilled work).  Although the VE did not explicitly state she used her professional

expertise to realistically discern the job numbers, the VE, both here and in another case decided

in this District, "did more than the VEs in *Clark* and *St. Pierre*, who only cited the raw numbers

with no further elucidation or statement of the accuracy of their estimates."  *Nichols v. Astrue*,

No. 10-11641-DPW, 2012 WL 474145, at *13 (D. Mass. Feb. 13, 2012).  Furthermore, when this

same VE testified regarding the mail sorter and electronics worker classifications in *Nichols*, she

explained that "no better published data exists which details the incidence of individual DOT

jobs, and that she was basing her estimation on the best information she had."  *Id.* at *6.

　　Therefore, it was reasonable for the ALJ to rely on the VE's testimony, which provided

reliable job numbers based on both published numbers and her expertise.  Moreover, even if the

more varied job groupings were disregarded, the VE testified that the mail sorter group had

3,680 jobs available in Massachusetts and 131,000 jobs nationally.  A.R. at 35, 40.  Such

numbers for that classification alone are substantial evidence supporting the ALJ's determination

at step five that there were a significant number of jobs that Figueroa could perform in the

national economy.  *See Custodio v. Astrue*, No. 07-11876-MLW, 2010 WL 3860591, at *4-5 (D.

Mass. Sept. 27, 2010) (noting that the First Circuit has no set number or test to determine what

minimum number of jobs equate to a "significant number," and finding that 500 jobs in district

of Rhode Island for one job grouping were enough to be "significant").

### *Claim of Error (4): The ALJ's Use of the Grid*

Figueroa faults the ALJ, in step 5, for making a finding of "not disabled" under the Grid

without, allegedly, determining the degree to which Figueroa's exertional and non-exertional

limitations eroded the applicable job base.  This argument misses the mark.  At Step 5, the ALJ

referenced the Grid only as part of her conclusion that "transferability of job skills is not material

to the determination of disability" because Figueroa is not disabled under the Grid whether or not

his skills are transferable.  A.R. at 21.  Contrary to Figueroa's implication, the ALJ did not

merely apply the Grid without regard to his additional limitations.  Rather, she recognized that

certain of Figueroa's limitations eroded the applicable job base, *id.*, and determined that jobs

existed for Figueroa, even in light of the limitations on his ability to perform light unskilled

work, based upon the testimony of the VE in response to the ALJ's hypothetical.  In these

circumstances, the ALJ committed no error and substantial evidence supports her decision.

## III. CONCLUSION

For the foregoing reasons, I recommend that the Court: (1) ALLOW the Commissioner's

Motion to Affirm (Docket No. 20) and (2) DENY the Plaintiff's Motion to Reverse (Docket No.

14).[12]

_____/s/ Leo T. Sorokin_____
Leo T. Sorokin
Chief U.S. Magistrate Judge

---

[12] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72 (b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).